EDWARD F. AND ELIZABETH MEEKER v. OTIS AND C. A. BROWNING.

1. RULE AS TO PRESERVING ERROR.

In an action on a gas and oil lease in which plaintiff, in rebuttal, seeks to introduce testimony regarding a certain custom, which is objected to and sustained by the court over plaintiff's exception :  *Held*, that the same rules as to preserving an error apply to evidence given in rebuttal as in evidence given in chief, and, therefore, plaintiff should have offered to show what he expected to prove by such witness, and failing to do so the court will not regard it as prejudicial what that custom was or was not, that was offered to be shown.

2. EXECUTION OF A RELEASE.

Where plaintiffs executed a gas and oil lease to defendants, which by one of its terms stipulated that the defendants were to pay plaintiffs $100.00 for each additional location of a well, after the first well, and subsequently defendants agreed to drill three additional wells within one year from the completion of the third well mentioned in the lease, in consideration that plaintiffs had agreed and did relinquish all "location money" stipulated in the lease :  *Held*, that this release was an absolute release of the "location money" and that it constituted a new contract founded upon a sufficient consideration.

3. RIGHT TO RECOVER FOR VALUE OF OIL USED IN OPERATING OIL WELLS.

Where the provisions of a gas and oil lease provide that plaintiffs are to receive one-sixth of all the oil produced :  *Held*, that in an action for the recovery of the value of the oil used by defendants in operating the wells, plaintiffs would be entitled to recover for only one-sixth of the gross amount of the oil used by defendants.

BENTLEY, J.

This is a petition in error brought by Edward F. Meeker and Elizabeth Meeker, who were plaintiffs below, to reverse a judgment of the court of common pleas in an action brought by them ; the amount of the verdict below was $45.51 in favor of the plaintiffs, but that was very much less than what was claimed by them in their petition, and so they seek to reverse the judgment in order that a new trial may be had of the case.  Several errors are assigned ; some of them in the admission of testimony ; some as to the construction placed by the court upon certain written instruments which were offered in evidence, and objections and exceptions also taken to the charge of the court and exception to its failure to charge certain propositions.  The action arises upon a transaction had upon what is ordinarily called an "oil and gas lease" which was granted by the plaintiff to all the defendants on the 21st day of April, 1890, by the terms of which the defendants Browning were to drill certain wells for oil or gas upon the premises of the plaintiffs and in case oil was obtained they were to give to the plaintiffs one-sixth of all the oil or mineral produced and saved from said premises and to deliver the same in tanks or pipe lines to the order of the parties of the first part, viz.: the plaintiffs.  The lease provides for the sinking of three wells within certain times named in the lease and contains this stipulation "and to pay $100.00 each for the second and third well after commencing the same," and on the margin is the following "should any additional well be drilled on said premises other than here stated, said second party

agrees to pay $100.00 for each additional location." The party of the second part, the defendants in this case, drilled five wells upon these premises. For the first, no location money was provided, but it is claimed by the plaintiffs that for each of the other four, $100 location money was due and is due to them and has never been paid. The plaintiffs also claim that in the operations carried on by the defendants under this contract, they took and converted to their own use a large quantity of crude oil which belonged to plaintiffs and which the defendants used for fuel purposes in their operations under the lease, as the plaintiffs claim to the amount and value of $400.00 and their action was for $400.00 location money and interest on those various sums from the time the wells were commenced and also in a special action sounding in tort for $400.00 for the conversion of this oil.

The answer denies in substance that this location money was due or payable and sets up that on the thirteenth of February, 1891, there was a written contract entered into between the parties by which this location money was all released, they deny the allegation regarding the conversion of the oil also, and claim other defenses in that respect. They say they did use a small quantity of crude oil for fuel, not exceeding 300 barrels in all, but they say that plaintiffs expressly granted to them the use of it and agreed that no charge should be made for it; then they further set up a usage and custom by which those operating for oil are allowed sufficient gas and oil from the lease for fuel purposes while operating under the lease, and that without charge. They further set up that they had a special agreement to pay plaintiffs for fuel oil used in operating wells on other leases but that they settled with them for that and paid them $15.00, and that was received in full settlement and satisfaction for any oil used by defendants.

The defendants then set up this further matter, viz: That at a certain time when some of these wells were producing gas, the plaintiffs surreptitiously connected their house and premises with defendant's pipe line through which defendants had been receiving gas in sufficient quantities to supply fuel for operating said lease from a gas and oil well on said premises, which gas the defendants had a right to use for their own purposes for fuel, and so deflected from the pipes of the defendants the gas which otherwise would have been furnished them for fuel, that it became necessary for them to provide other fuel; and they claim they were damaged for that reason in the sum of $2,000.00 for which they ask judgment. In the reply to that answer plaintiffs say that by the agreeement of February 13, 1893, it is provided that if defendants should drill the third well provided for in said lease and three additional wells within one year from the time fixed for the completion of said third well, that said defendants should not be required to pay said location money. But plaintiffs say that said defendants did not drill said wells as required by said agreement of February 13, 1893. And plaintiffs deny each and every allegation of new matter in the answer contained that is not herein expressly admitted.

On those issues the case proceeded to trial before a jury, evidence being given by both parties.

In the course of the trial an exception was taken on page 70 of the record which has been called to our attention; an exception to the ruling of the court as to the admission of certain evidence offered by the plaintiffs in rebuttal. The plaintiffs in rebuttal called one Daniel Mercer and

the question was put to him: "You live in Bowling Green?" A. "Yes, sir."

Q. "Are you acquainted with the custom in this country where a lease is operated, as to whether oil used for pumping purposes etc., do you know what the custom is as to whether the fuel oil is paid for by the operators?" A. "I don't know all the custom, I know a part of it."

Q. "Do you know what the custom is in this field among operators?" A. "I know what the custom is with those who work with us."

Q. "What is that custom?" Defendants objected to question; objection sustained and exception taken. Thereupon the plaintiffs rested their case. Now whatever might be said as to the propriety of that question, considering the record as it was made prior to that time, it will be seen that the plaintiffs did not take the requisite steps to preserve the error which is there claimed, while this is in rebuttal, the same rules apply as in testimony in chief. There should have been an offer to prove what the parties expected and desired by the witness, and in the absence of anything of that kind, the rule is that the court will not regard it as prejudicial what that custom was or was not, offered to be shown. Of course it may naturally be supposed that the plaintiffs would seek to rebut certain evidence that had been given by the defendants, but we think the rule as we have stated applies notwithstanding that the defendants had offered testimony as to such a custom as they claim. After the close of the testimony this action was taken by the court as appears by the record. "Now the view that the court takes of this case, the only question that is to be submitted to you is the value of certain oil that it is said was used in drilling the wells. Under the evidence the plaintiffs will be entitled to recover for the fuel oil used by defendants in drilling these wells, so many as you find were drilled, and entitled to recover whatever you find is the fair value of the fuel oil and it is for the plaintiff to satisfy you by a fair preponderance of the evidence as to how many wells were drilled, and as to how much oil has not been paid for and the value of the oil." At the close of the charge, this exception was noted: "To said charge of the court and especially to the failure of the court to submit to the jury the question whether the plaintiffs were entitled to recover for the oil used for fuel in pumping oil; and failing to charge that plaintiffs were entitled to recovery for such fuel oil."

It is manifest from the record that the principal amount which the plaintiffs in this action would hope to recover, was for this location money. It is by much the larger amount, and this action of the court in construing this subsequent paper of February 13, 1891, presents perhaps the most important question which has been argued before us. I will read the alleged release of the location money:

"MUNGEN, OHIO, Feb. 13, 1891.

Agreement between Elizabeth Meeker, Edward F. Meeker and O. A. Browning and C. A. Browning. In consideration that Elizabeth Meeker and Edward F. Meeker have and do relinquish all location money stipulated in a certain lease made between the parties hereto on April 21, 1890. We, O. A. Browning and C. A. Browning, agree to drill three addi-

tional wells within one year from the completion of the third well mentioned in said lease.

Signed in duplicate, ELIZABETH MEEKER,
EDWARD F. MEEKER,
C. A. BROWNING."

The court construed that as an absolute release of this location money. The plaintiffs here claim that in order to construe a release the action here provided for to be taken on the part of the Brownings must in fact have been taken, and that those three additional wells must have been drilled, and drilled within the time provided for in this paper; that otherwise, it was a mere offer in effect to release, and never took effect as a release until such work was in fact done and the wells drilled. But we think it is clear and manifest that that was not the proper view to be taken of this paper. The reply sets up that the paper was an agreement to release in case these additional wells were in fact drilled, but the paper provides that now, at the time of the execution and delivery of this paper the plaintiffs have agreed and do relinquish all location money stipulated, and the Brownings agree to drill three additional wells within one year.

It would seem that an absolute release was made by the plaintiffs upon the agreement of these parties to drill these additional wells. This was a new contract founded upon a sufficient consideration and if it was not complied with or released in any way, any action of the injured party must be had upon this contract; and the construction placed upon that by the court we think is manifestly, just and proper.

The other aspects of the case present a little more difficult question. It will be seen that the court allowed the jury to pass upon the evidence relating to the use of fuel oil for drilling these wells and did not submit to the jury the question as to fuel oil used in the pumping of the wells and steaming of the oil after it was produced.

It is said that the court construed the clause in the original lease providing for the delivery of one-sixth of the oil produced and saved, as excluding the idea of delivering any such oil except such as was in fact, finally run into the pipe lines, or which ought to have been run into the tanks or pipe lines in the ordinary way of operating for oil. We think the construction given by the court in that particular is at least of doubtful propriety, but the parties, when the court took the position that it did, did not request any charge to be given in this respect; did not formulate any request of their own, and did not in any way ask the court to charge upon that subject; and besides that, in looking over the proof, we find an unequivocal statement on the part of one of the witnesses as to the amount of oil which was used in all, which he says did not in any event exceed three hundred barrels.

This includes not only all the oil that was used in drilling, but the oil that may have have been used for other purposes. The testimony on the part of the plaintiffs as to how much oil was used for steaming or pumping the oil is exceedingly vague and indefinite, no one seems to know exactly how much there was of it. The plaintiffs say more or less of it was used all the time.

But taking the testimony as it was presented, and the verdict of the jury, and it seems to us that it can hardly be figured from the record that the plaintiffs were prejudiced or injured by this action of the court and the verdict of $45.51. The price of oil at various times is given, but

how much oil was used during the time oil was sold at fifteen cents per barrel, or how much when it sold for thirty cents, thirty-five cents, or thirty-seven and one-half cents, does not appear, and it seems to us that the plaintiffs can only recover as the court charged the jury : for one-. sixth of the gross amount used, and that there has been no substantial injury or prejudice resulting from this action of the court. In view of the whole record upon this subject as to the oil used for operating the well and steaming the oil, we do not feel warranted in disturbing the verdict of the jury ; and, finally against the plaintiff in error in what we regard as the main matter, we think the judgment of the court below should be affirmed.

*Parker & Moor*, for plaintiff.

*Baldwin & Harrington*, for defendant.

---

## NEGLIGENCE—BILLS OF EXCEPTIONS.